WILSON, Circuit Judge,
concurring:
The dissent may well be correct that the investigation of Nelson began with a pre-Skilling theory of criminal concealment. And if the Government’s case rested only on Nelson’s nondisclosure of the SSI payments, then I would be inclined to agree with the dissent that no crime within the meaning of § 1346 occurred. Skilling definitively foreclosed the possibility that honest services fraud could criminalize undisclosed conflicts of interest. But the *514 record shows that Nelson did not merely hide a business relationship — he hid payments that were intended to influence his actions as the chairman of JaxPort. It should come as no surprise that bribes are often concealed. Nelson’s concealment was not the crime; it was merely a symptom.
I am also unpersuaded that Young’s payments to Nelson were not bribes because they were “permitted.” Permitted by whom? Nelson points to two grounds: the rubber stamp of Jacksonville’s General Counsel Cindy Laquidara, and the fact that Nelson refrained from voting on SSI matters. For starters, a municipality’s legal opinion hardly binds the Justice Department or this court. More importantly, Laquidara based her opinion on a mere fraction of the truth, because Nelson only revealed to her that he had submitted a joint bid with SSI to the United States Army Corps of Engineers. He did not reveal the most important information: he was on SSI’s payroll as a lobbyist.
Nelson’s only remaining justification is that he recused himself from voting on matters involving SSI. This presumably stems from section 112.3143(3)(a) of the Florida Statutes, which provides that no “public officer shall vote in an official capacity upon any measure ... which he or she knows would inure to the special private gain or loss of any principal by whom he or she is retained.” Although this argument must undoubtedly fail, it reveals that Nelson is likely as much a victim of circumstance as his own cupidity. Nelson seems to have been under the impression that as long as he recused himself, he could accept any payment that came his way.
Yet it cannot be the case that public officials are immune from the federal corruption laws simply because they refrain from voting “yea” or “nay,” for the simple fact that it cannot be seriously contended that Nelson’s influence on the board was limited to voting. The record contained numerous instances of Nelson exerting influence on SSI’s behalf. Although we have not decided if bribery in the honest services context requires a showing of quid pro quo, even assuming that it does, this case obviously meets that standard. See United States v. Siegelman, 640 F.3d 1159, 1173-74 (11th Cir.2011), cert. denied, — U.S. -, 132 S.Ct. 2711, 183 L.Ed.2d 84 (2012). For example, Young testified that he asked for, and received, Nelson’s help in obtaining a change order’s approval that added almost $150,000 of work to SSI’s contract. Young also testified that he understood his payments to Nelson to be bribes. There was more than enough evidence for a jury to find that Nelson knowingly accepted payments that were intended to influence his acts as a public official.
It is unfortunate that it appears to have been routine for JaxPort board members to lobby for companies that routinely brought business before it. It is entirely conceivable that Nelson became swept up in what was the standard operating procedure for the board’s unpaid, part-time members. The dissent points out that Fiorentino, a fellow board member and lobbyist, was “innocent” simply because he did not conceal his financial relationship with Young. I must agree that I am unable on this record to discern a difference between Fiorentino’s conduct and Nelson’s. But Fiorentino’s lack of a conviction does not automatically gut Nelson’s. For whatever reason, the Government opted not to pursue Fiorentino, and the Court has no authority — absent very unusual circumstances — to interfere with the exercise of the prosecutor’s charging discretion.